# EXHIBIT A

DAJ

FILED
DECEMBER 27, 2007
MICHAEL W. DOBBINS
CLERK, U S DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

07 C 7268

METLIFE INVESTORS USA INSURANCE COMPANY,

Plaintiff,

v.

SAMANTHA CHHUN and MOEUN SOK,

Defendants.

No.

JUDGE MORAN
MAGISTRATE JUDGE ASHMAN

## COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION

MetLife Investors USA Insurance Company ("MetLife") for its Complaint against Defendants Samantha Chhun and Moeun Sok states as follows:

### Nature of the Case

1. This is an action for declaratory judgment and for rescission of a life insurance policy issued by MetLife in the amount of $400,000 which was procured by material misrepresentation. Defendant Samantha Chhun is the owner of a life insurance policy on the life of Defendant Moeun Sok. Ms. Sok, the insured, did not disclose on her application the full extent of her medical history, including that she was receiving Social Security disability benefits due to her chronic dizziness and arthritis. She also misrepresented her net worth and annual income and the purpose of the coverage. Ms. Chhun signed the application that included the misrepresentations. Had MetLife known about these material undisclosed matters and misrepresentations prior to the issuance of the policy, it would not have issued the policy. MetLife therefore seeks to rescind the policy and seeks a declaratory judgment stating that the policy is void *ab initio* and is no longer in effect.

**Parties**

2. MetLife is an insurance company organized under the laws of the State of Delaware with its principal place of business in the State of Delaware.

3. Upon information and belief, Samantha Chhun is a resident of Brookfield, Illinois.

4. Upon information and belief, Moeun Sok is a resident of Brookfield, Illinois and a Permanent Resident of the United States.

**Jurisdiction and Venue**

5. This court has jurisdiction over this matter pursuant to 28 U.S.C. §1331(a) in that the parties to this matter are citizens of different states and the face value of the policy at issue exceeds $75,000.

6. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(a).

**Ms. Sok and Ms. Chhun Apply for the Policy**

7. On or about February 1, 2006, MetLife issued a Flexible Premium Adjustable Life Insurance Policy with Coverage Continuation, bearing policy number 206 020 342 USU (the "Policy"), on the life of Ms. Sok in the face amount of $400,000. A true and correct copy of the Policy is attached hereto as Ex. A.

8. In order to obtain the Policy, Ms. Sok was required to complete a written Application for Individual and Multi-Life Life Insurance form (the "Application") and answer certain questions in the Application. Ms. Sok completed the Application on or about December 1, 2005 and submitted it to MetLife for consideration. A true and correct copy of the Application is part of and attached to the Policy.

9. In Part I, Section 1, "Proposed Insureds" Ms. Sok listed her net worth at $1,500,000 and stated that her annual income was $100,000.

10. Ms. Sok failed to disclose, as MetLife later learned, that she in fact had no annual income and little to no net worth.

11. In Part II, Section 1, "Physician Information" Ms. Sok reported that on her last visit to her doctor she was found "ALL OKAY."

12. Ms. Sok failed to disclose that she has been receiving Social Security disability benefits for more than a decade because of her chronic dizziness and arthritis.

13. In Part II, Section 2, "Medical Questions" Ms. Sok was asked "3. Has **ANY** person to be insured **EVER** received treatment, attention, or advice from any physician, practitioner or health facility for, or been told by any physician, practitioner or health facility that he/she had: . . . . A. High blood pressure; chest pain; heart attack; or any other disease or disorder of the heart or circulatory system?" (emphasis in original) Ms. Sok checked the box for "No."

14. Ms. Sok failed to disclose that she had visited McNeal Hospital on August 10, 2004 and that the hospital's records indicate a diagnosis of cardiomegaly with dilation of the ascending aorta. Ms. Sok also failed to disclose that she had received treatment at the Oak Park Hospital on January 6, 2000 for posterior nasal bleeds.

15. In addition, Section 2, Question 3.C. asked the same question regarding: "Seizures; stroke; paralysis; Alzheimer's disease; multiple sclerosis; memory loss; Parkinson's disease; progressive neurological disorder; headaches; or any other disease or disorder of the brain or nervous system?" Again, Ms. Sok checked the box for "No."

16. Ms. Sok failed to disclose that she has been receiving Social Security disability benefits for more than a decade due to, among other things, chronic dizziness. Ms. Sok also

failed to disclose that she had visited McNeal Hospital on August 10, 2004 and that the hospital's records indicate a diagnosis of Bell's Palsy.

17. In addition, Section 2, Question 3.G. asked the same question regarding: "Arthritis; gout; or disorder of the muscles, bones or joints?" Again, Ms. Sok checked the box for "No."

18. Ms. Sok failed to disclose that she had been on disability for more than 10 years, in part because of chronic arthritis, and had received a diagnosis of spinal compression deformity on or about August 10, 2004.

19. Finally, Ms. Sok appears to have informed the MetLife sales representative that the purpose of the Policy was to protect a business loan. In fact, Ms. Sok had no obligation with regard to the loan.

20. Upon signing the Application, Ms. Sok agreed as follows:

> **Agreement/Disclosure: I Have read this application for life insurance including any amendments and supplements and to the best of my knowledge and belief, all statements are true and complete. I also agree that:**
>
> - My statement in this application and any amendment(s); paramedical/medical exam; and supplement(s) are the basis of any policy issued.
> - This application and any: amendment(s); paramedical/medical exam; and supplement(s) to this application, will be attached to and become part of the new policy.
> - No information will be deemed to have been given to the Company unless it is stated in this application and paramedical/medical exam, and any supplement(s). . . .

Application at 14.

21. On or about December 1, 2005, Ms. Sok signed the Application in Cicero, Illinois. Ms. Chhun also signed the Application on December 1, 2005 in Cicero, Illinois.

22. Ms. Sok knowingly made statements, representations and answers in her Application—and Ms. Chhun signed and ratified that Application—for the purpose of inducing MetLife to issue the Policy.

**MetLife Issues the Policy and Then Declares it Void**

23. In reliance upon the statements, representations and answers provided by Ms. Sok in the Application, MetLife issued the Policy. MetLife justifiably relied on Ms. Sok's and Ms. Chhun's representations. The answers Ms. Sok provided to questions in the application in Part I, Section 1; Part II, Section 1; and Part II, Section 2 were material to the risk assumed by MetLife in issuing the policy. Had MetLife known the true facts about Ms. Sok's medical history and financial situation, it would not have issued the Policy as applied for.

24. On September 5, 2007, MetLife informed Ms. Chhun of its election to treat the Policy as void because of the material misrepresentations made in the Application, including failure to disclose medical treatment for serious health conditions and the incorrect information Ms. Sok provided regarding her net worth and annual income.

25. On September 5, 2007, MetLife refunded the premiums paid with interest in the form of a check for $24,709.83. In addition, in September 2007, MetLife stopped bank withdrawals for Policy premiums.

**COUNT I**
**(Declaratory Judgment)**

26 MetLife reincorporates the allegations of Paragraphs 1 through 24 of the Complaint as if fully set forth herein.

27. MetLife seeks a declaration that the Policy is void *ab initio* because the Policy was issued on the basis of Ms. Sok's material misrepresentations in the Application.

28. Prior to the commencement of this action, MetLife tendered the sum of premiums paid with interest to Ms. Chhun in the form of a check, which tender is the extent of MetLife's liability under the Policy.

29. Ms. Chhun refused tender of the Policy premiums. MetLife remains ready, willing and able to refund the premiums paid with interest.

30. An actual, real and substantial controversy now exists between MetLife and Defendants with respect to their conflicting claims regarding the Policy.

31. MetLife has no adequate remedy at law.

**WHEREFORE**, MetLife respectfully requests that this Court grant the following relief:

(i) An Order declaring the Policy is void *ab initio*;

(ii) An Order declaring that Defendants be prohibited from filing or prosecuting any action in any other court related to said Policy;

(iii) An Order awarding MetLife its costs; and

(iv) An Order awarding MetLife any other and further relief that this Court deems just and proper.

**COUNT II**
**(Rescission)**

32. MetLife reincorporates the allegations of Paragraphs 1 through 24 of the Complaint as if fully set forth herein.

33. The Policy is void *ab initio* because the Policy was issued on the basis of Ms. Sok's material misrepresentations in the Application.

34. Therefore, MetLife seeks a declaration the Policy is rescinded, null and void and of no legal effect, and that MetLife be discharged of and from all liability with regard to the Policy.

35. MetLife has no adequate remedy at law.

**WHEREFORE**, MetLife respectfully requests that this Court grant the following relief:

(i) An Order declaring that the Policy is void *ab initio*;

(ii) An Order declaring that Defendants be prohibited from filing or prosecuting any action in any other court related to said Policy;

(iii) An Order awarding MetLife its costs; and

(iv) An Order awarding MetLife any other and further relief that this Court deems just and proper.

Dated: December 27, 2007

Respectfully submitted,

METROPOLITAN LIFE INSURANCE COMPANY

By: /s/ Brendan J. Healey
One of its attorneys

Steven P. Mandell #6183729
Brendan J. Healey #6243091
**MANDELL MENKES LLC**
333 West Wacker, Suite 300
Chicago, Illinois 60606
(312) 251-1000

DAJ

JUDGE MORAN
MAGISTRATE JUDGE ASHMAN

BRANCH/AGENCY 97J 821 DETACH 000



POLICY NUMBER: 206020342USU

07 C 7268

INSURED: MOEUN SOK

## FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE WITH COVERAGE CONTINUATION

### Non-Participating

Flexible Premiums are payable during the lifetime of the Insured to the Maturity Date. The coverage provided by this Policy may be continued beyond the Maturity Date. If the Insured dies while this Policy is in force, we will pay the Policy Proceeds to the Beneficiary. We must receive proof of the Insured's death. Any payment will be subject to all of the provisions of this Policy.

## RIGHT TO EXAMINE POLICY

**Please read this Policy. You may return this Policy to us or to our representative through whom it was purchased within 20 days from the date You receive it. If You return it within this period, we will refund any premium paid and the Policy will be void from the start.**

This Policy is a legal contract between the Owner and MetLife Investors USA Insurance Company. PLEASE READ YOUR CONTRACT CAREFULLY

Signed for the Company at its Home Office, Wilmington, DE 19899

*President* *Secretary*

## POLICY SPECIFICATIONS

| | |
|---|---|
| Insured | MOEUN SOK |
| Policy Number | 206020342USU |
| Policy Date | DECEMBER 27, 2005 |
| Issue Date | FEBRUARY 1, 2006 |
| Maturity Date | DECEMBER 27, 2031 |
| Initial Face Amount | $400,000 00 |
| Issue Age of Insured | 74 |
| Sex | FEMALE |
| Risk Classification | PREFERRED NONSMOKER |
| Death Benefit Option | A |
| Planned First Year Lump Sum* | $0.00 |
| Planned Monthly Premium* Payable for 25 Years | $1,038.71 |
| Guaranteed Coverage Date (Based on Planned Monthly Premium and Planned First Year Lump Sum) * | DECEMBER 2031 |
| Minimum First Year Total Premium** | $7,012 92 |
| Coverage Continuation Benefit Minimum First Year Total Premium** | $7,012 92 |
| Coverage Continuation Benefit Annual Premium (Payable To Age 100 To Guarantee Coverage For Lifetime)*** | $11,965 83 |

**Policy Plan:** Flexible Premium Adjustable Life Insurance with Coverage Continuation

**Benefits -** As specified in Policy and in any Rider

| Riders | Face Amount | Risk Classification |
|---|---|---|

*Your Policy will stay in force to the Guaranteed Coverage Date if: at least the Planned Monthly Premium is paid by each Planned Premium Due Date for the number of years indicated; any Planned First Year Lump Sum is paid by the first policy anniversary; no Loans are taken; no partial withdrawals are made; no policy changes are made; and no riders are added or removed. See the Continuation of Coverage Beyond the Maturity Date provision.

**This premium will be recalculated and shown on Your new Policy Specifications pages if: any policy changes are made; or any riders are added or removed.

*** You are not required to pay this premium. Your Policy's coverage is guaranteed for the lifetime of the Insured by payment of this amount unless: the premium amount is paid on other than an annual basis and/or is not received by the Policy Date and on or prior to each policy anniversary; a policy change occurs; a Loan is taken and the Policy Loan Balance at any time becomes greater than or equal to the Coverage Continuation Benefit Value; a partial withdrawal is made; or any riders are added or removed. This premium will be recalculated and shown on Your new Policy Specifications pages if: any policy changes are made; any partial withdrawals are taken; or, any riders are added or removed. Your Policy's annual report will show the duration of Your Coverage Continuation Benefit You may contact us for additional information if You pay premiums on other than an annual basis. If the Coverage Continuation Benefit Annual Premium (Payable to Age 100) indicates NOT AVAILABLE, there is no level annual premium amount payable to Age 100 that will guarantee Your policy will stay in force for the lifetime of the Insured and that will allow this Policy to continue to qualify as life insurance.

## TABLE OF GUARANTEED MAXIMUM MONTHLY COST OF INSURANCE RATES PER $1,000

**Insured:** MOEUN SOK **Policy Number:** 206020342USU

**Date of Coverage:** DECEMBER 27, 2005

| Attained Age | Rate | Attained Age | Rate | Attained Age | Rate |
|---|---|---|---|---|---|
| 74 | 2.0233 | 84 | 5.4683 | 94 | 14.1366 |
| 75 | 2.2200 | 85 | 6.0700 | 95 | 16.0766 |
| 76 | 2.4358 | 86 | 6.6158 | 96 | 17.9191 |
| 77 | 2.6733 | 87 | 7.4375 | 97 | 19.8158 |
| 78 | 2.9358 | 88 | 8.2958 | 98 | 20.1408 |
| 79 | 3.2191 | 89 | 9.2108 | 99 | 21.2283 |
| 80 | 3.5358 | 90 | 10.0541 | 100+ | 0.0000 |
| 81 | 3.9658 | 91 | 10.4808 | | |
| 82 | 4.4508 | 92 | 11.3200 | | |
| 83 | 4.9341 | 93 | 12.5650 | | |

## TABLE OF COVERAGE CONTINUATION FACTORS

(See Coverage Continuation Section.)

**Insured:** MOEUN SOK **Policy Number:** 206020342USU

**Date of Coverage:** DECEMBER 27, 2005

| | First Year | Thereafter |
|---|---|---|
| **Coverage Continuation Benefit Percent Of Premium Charge** | | |
| **For Premiums up to and including $47,862.72* each policy year** | 35.00% | 35.00% |
| **For Premiums in excess of $47,862.72* each policy year** | 27.12% | 35.00% |
| **Monthly Coverage Continuation Benefit Policy Charge** | $0 | |
| **Monthly Coverage Continuation Benefit Expense Charge Per $1,000** | | |
| **First Year** | 0.3959 | |
| **Years 2 & Later** | 0.0000 | |
| **Coverage Continuation Accumulation Factors** | | |
| **First Year** | 0% | |
| **Years 2-15** | 5% | |
| **16 & Later** | 6.5% | |
| **Coverage Continuation Surrender Charge Percentage** | | |
| **Years 1-10** | 70.00% | |
| **Years 11 & Later** | 0% | |
| **Risk Adjustment Percent** | 25.00% | |
| **Coverage Continuation Expected Threshold Amount Annually** | $11,367.54* | |
| **Coverage Continuation Reactivation Period** | 9 Months | |

*These premium amounts will be recalculated and shown on Your new Table of Coverage Continuation Factors page if: any policy changes are made; any partial withdrawals are taken; or any riders are added or removed.

## 1. DEFINITIONS IN THIS POLICY

**Attained Age** — The Issue Age plus the number of completed policy years. This includes any period during which this Policy was lapsed.

**Designated Office** — Our Home Office or any other office we designate.

**Excess Loan** — An Excess Loan occurs when the Policy Loan Balance exceeds the Cash Value, less any Surrender Charge that would apply upon surrender whether or not there is a surrender.

**Insured** — The person whose life is insured under this Policy. See the Policy Specifications page

**Interest Crediting Start Date** — The date the first premium is applied to the Cash Value. This date will be the later of:

1. The Policy Date; and
2. The date we receive the first premium at our Designated Office

**Issue Age** — The age of the Insured as of his or her birthday nearest to the Policy Date.

**Issue Date** — The effective date of the initial coverage under this Policy is the Issue Date shown on the Policy Specifications page. It is also the date from which the contestable and suicide provisions for the initial coverage are measured.

**Maturity Benefit** — If the Insured is living and the Policy is in force on the Maturity Date, You may elect to terminate the Policy and receive the Cash Surrender Value, if it is greater than zero, as a Maturity Benefit.

**Maturity Date** — The policy anniversary on which the Insured is Attained Age 100.

**Planned First Year Lump Sum** — The Planned First Year Lump Sum is the amount of premium that You stated in the application for this Policy that You intend to pay as a lump sum by the first policy anniversary.

**Planned Premium** — The Planned Premium is the amount that You stated in the application for this Policy that You intend to pay as a premium on the Planned Premium Due Dates.

**Planned Premium Due Date** — The Planned Premium Due Date is based on the Policy Date of the Policy and the mode in which You choose to pay premiums. If You pay premiums on an annual mode, it is Your policy anniversary each year. If You pay premiums on other than an annual mode, it is the policy anniversary and each semi-annual, quarterly or monthly anniversary as applicable.

**Policy Date** — Policy years, months and anniversaries are all measured from the Policy Date. It is shown on the Policy Specifications page.

**Policy Loan Balance** — The Policy Loan Balance at any time equals the outstanding Loans plus Loan Interest accrued to date.

**Requested Increase in Face Amount** — A "requested increase in Face Amount" is an increase in Face Amount You applied for after the Issue Date of the Policy

**You and Your** — The Owner of this Policy.

In the Application the words "You" and "Your" refer to the proposed insured person(s).

**We, Us and Our** — MetLife Investors USA Insurance Company.

## 3. GENERAL PROVISIONS

**The Contract**

We have issued this Policy in consideration of the Application and payment of premiums. The Policy, the Application, any riders, any endorsements and any application for an increase in Face Amount or for the deletion or addition of a rider constitute the entire contract and are attached to and made a part of the Policy The Policy may be changed by mutual agreement. Any change must be in writing and approved by our President or Secretary. Our representatives have no authority to alter or modify any terms, conditions, or agreements of this Policy, or to waive any of its provisions

**Statements in Application**

All statements made by the Insured or on his or her behalf, or by the applicant, will be deemed representations and not warranties, except in the case of fraud. Material misstatements will not be used to void the Policy, any rider or any increase in Face Amount or to deny a claim unless made in the application for a Policy, a rider or an increase in Face Amount.

**Claims of Creditors**

To the extent permitted by law, neither the Policy nor any payment under it will be subject to the claim of creditors or to any legal process.

**Misstatement of Age or Sex**

If there is a misstatement of age or sex in the application, the amount of the Death Benefit will be that which would be purchased by the most recent Monthly Deduction at the correct age and sex.

If we make any payment or policy changes in good faith, relying on our records or evidence supplied to us, our duty will be fully discharged. We reserve the right to correct any errors in the Policy.

**Incontestability**

We cannot contest the initial coverage after this Policy has been in force during the lifetime of the Insured for two years from its Issue Date We cannot contest a requested increase in Face Amount with regard to material misstatements made concerning such increase after it has been in force during the lifetime of the Insured for two years from its effective Date of Coverage We cannot contest a Death Benefit increase caused by a premium payment that required evidence of insurability after a period of two years from the date we received the premium payment This provision will not apply to any rider which contains its own incontestability clause.

If this Policy was issued as the result of the exercising of an option given in another policy and proof of insurability was not required, the contestable period for that coverage will end at the same time as it would have under the original policy.

**Suicide Exclusion**

If the Insured dies by suicide, while sane or insane, within two years from the Issue Date, the amount payable will be limited to: the amount of premiums paid or the reserve if greater and required by state law; less any Policy Loan Balance on the date of death; and less any partial withdrawals.

If the Insured, while sane or insane, commits suicide within two years after the effective Date of Coverage of any requested increase in Face Amount: the increase will not be in effect; and the Monthly Deduction attributable to the increase will be added to the Cash Value prior to calculation of the Death Benefit

If this Policy was issued as the result of the exercising of an option given in another policy and proof of insurability was not required, the suicide period for that coverage will end at the same time as it would have under the original policy.

## 4. POLICY BENEFITS

**Policy Proceeds**

The Policy Proceeds are:

1. The Death Benefit as described below; plus
2. Any insurance on the life of the Insured provided by riders; plus
3. The Monthly Cost of Insurance for the portion of the policy month from the date of death to the end of the policy month of death, unless it is part of the Accumulated Amount (see the Cash Value provision); less
4. Any payment due under a Grace Period provision as of the date of death; less
5. Any Policy Loan Balance.

**Definition of Life Insurance**

This Policy is intended to qualify as a life insurance contract under the Internal Revenue Code of 1986 (called "the Code") and any interpretive regulation or rulings by the Internal Revenue Service. The Corridor Factors below are based on the percentages as currently described in Section 7702(d) of the Code modified for ages 95 and above, or any applicable successor provision.

| Attained Age | Corridor Factor | Attained Age | Corridor Factor | Attained Age | Corridor Factor |
|---|---|---|---|---|---|
| 0-40 | 2.50 | 54 | 1.57 | 68 | 1.17 |
| 41 | 2.43 | 55 | 1.50 | 69 | 1.16 |
| 42 | 2.36 | 56 | 1.46 | 70 | 1.15 |
| 43 | 2.29 | 57 | 1.42 | 71 | 1.13 |
| 44 | 2.22 | 58 | 1.38 | 72 | 1.11 |
| 45 | 2.15 | 59 | 1.34 | 73 | 1.09 |
| 46 | 2.09 | 60 | 1.30 | 74 | 1.07 |
| 47 | 2.03 | 61 | 1.28 | 75-90 | 1.05 |
| 48 | 1.97 | 62 | 1.26 | 91 | 1.04 |
| 49 | 1.91 | 63 | 1.24 | 92 | 1.03 |
| 50 | 1.85 | 64 | 1.22 | 93 | 1.02 |
| 51 | 1.78 | 65 | 1.20 | 94-99 | 1.01 |
| 52 | 1.71 | 66 | 1.19 | 100+ | 1.00 |
| 53 | 1.64 | 67 | 1.18 | | |

**Death Benefit Option**

There is one Death Benefit Option available on this Policy.

**Death Benefit Option A**

The Death Benefit prior to the Maturity Date is the greater of:

1. The Face Amount shown in the Table of Face Amounts for the applicable policy year; and
2. The applicable Corridor Factor shown above times the Cash Value of the Policy on the date of death.

6. If the decrease is made during the 12 months following the Date of Coverage of any requested increase in Face Amount we will deduct from the Cash Value a portion of the unpaid Monthly Coverage Expense Charges due for the remainder of the 12-month period associated with that increase. This portion will be the ratio of the amount of the decrease to the Face Amount increase times the unpaid Monthly Coverage Expense Charge due for the remainder of the 12-month period.

7. A Surrender Charge may apply to the decrease in Face Amount.

8. The requested decrease in Face Amount may require a decrease in amounts provided by any riders attached to this Policy.

Each requested increase in Face Amount will be subject to the following conditions:

1. Proof that the Insured is insurable by our standards on the date of the requested increase must be submitted

2. The increase will become effective on the monthly anniversary date on or following our approval of the requested increase.

3. The increase will be at the Risk Classification for which You then qualify.

4. The increase must be at least equal to the Minimum Face Amount Increase shown on the Policy Specifications page.

5. New insurance must be available under our underwriting rules on the same plan at the age of the Insured on the Date of Coverage.

6. The total Face Amount after the increase cannot be greater than our published maximums.

We will amend Your Policy to show the Date of Coverage for the change in Face Amount.

**Reinstatement**

Prior to the Maturity Date, You may reinstate Your lapsed Policy within three years after the date of lapse. The Policy cannot be reinstated if it has been surrendered. To reinstate, You must submit the following items:

1. A written request for reinstatement.
2. Proof satisfactory to us that the Insured is insurable by our standards.
3. Payment of an amount large enough to keep the Policy in force for at least four months.

Upon receipt of the above payments, we will deduct any Monthly Deductions and Loan Interest due and unpaid at the time of lapse

The Insured must be alive on the date we approve the request for reinstatement. If the Insured is not alive, such approval is void and of no effect.

The reinstated Policy will be in force from the date we approve the reinstatement application. There will be a full Monthly Deduction for the policy month which includes this date.

Any Loans in effect at the time of lapse may be repaid or reinstated.

The Surrender Charge, Maximum Percent of Premium Charge, and the Maximum Monthly Coverage Expense Charge at the time of Reinstatement will be those in effect at the time of lapse. The Cash Value following Reinstatement will include the amount of any Surrender Charge imposed at the time of lapse.

Riders can be reinstated only as stated in the rider or with our consent.

The Coverage Continuation Benefit will not be in effect upon Reinstatement.

## 7. CASH VALUES

**Cash Value**

The Cash Value on the Interest Crediting Start Date equals:

1. The initial net premium received; less
2. The Monthly Deductions due from the Policy Date through the Interest Crediting Start Date.

The Cash Value on any day after the Interest Crediting Start Date equals:

1. The Cash Value on the preceding day, with interest on such value at the current rate(s); plus
2. Any net premium received on that day; less
3. Any partial withdrawal made on that day; less
4. Any Surrender Charge taken on that day due to a decrease in Face Amount or partial withdrawal; less
5. If that day is a monthly anniversary, the Monthly Deduction to cover the policy month which starts on that day.

Any deduction from the Cash Value will reduce the portion of the Cash Value which results from the most recent premium payments.

**Accumulated Amount**

If the Cash Value of the Policy becomes negative while the Coverage Continuation Benefit is in effect, the Monthly Deduction will be accumulated without interest (called "Accumulated Amount"). This Accumulated Amount must be repaid before any Cash Value can develop under the Policy. This Accumulated Amount will not decrease the Death Benefit and will not be paid as part of the Policy Proceeds. It will not be considered in calculating the cost of insurance charges.

**Cash Value After the Maturity Date**

If this Policy is continued beyond the Maturity Date, the Cash Value of Your Policy on and after the Maturity Date will be determined in the same manner as described above, except there will be no Monthly Deductions taken. Premiums cannot be paid on or after the Maturity Date, except for payments required under a Grace Period.

**Cash Value Interest Rate**

The interest credited to the non-loaned Cash Value for a specific month will be at an effective annual rate not less than the Cash Value Guaranteed Interest Rate shown on the Policy Specifications page

If You borrow against Your Cash Value, the interest rate used to calculate the interest earned on the Cash Value securing any Loan will be at an effective annual rate not less than the Cash Value Guaranteed Interest Rate shown on the Policy Specifications page.

**Monthly Deduction**

The Monthly Deduction is:

1. The Monthly Cost of Insurance; plus
2. The monthly costs of insurance for riders attached to this Policy; plus
3. The Monthly Coverage Expense Charge; plus
4. The Monthly Policy Charge.

There will be no Monthly Deduction taken on or after the Maturity Date.

**Cash Surrender Value**

The Cash Surrender Value of this Policy is:

1. The Cash Value at the time of surrender; less
2. Any Policy Loan Balance; less
3. Any unpaid Monthly Coverage Expense Charges due for the remainder of the first policy year; less
4. Any unpaid Monthly Coverage Expense Charges due for the remainder of the 12-month period following the Date of Coverage of a requested increase in Face Amount; less
5. Any Surrender Charge that would apply upon surrender whether or not there is a surrender.

**Surrender**

You may surrender Your Policy for its Cash Surrender Value during the lifetime of the Insured. We will determine the Cash Surrender Value as of the date we receive Your request in a form acceptable to us at our Designated Office. The Cash Surrender Value will be paid to You in one sum unless You elect in writing to apply all or part of the proceeds to a Payment Option (see Payment Options provision). The Policy will terminate on the monthly anniversary on or next following the date of surrender. The Cash Surrender Value will not be reduced by the monthly Cost of Insurance due on that date for a subsequent policy month. If the Insured dies on or after the date of surrender and before the termination of the Policy: the surrender will be reversed; and the Cash Surrender Value paid to You will be processed as a Loan. Therefore, the Cash Surrender Value paid to You will be deducted from the Policy Proceeds. (See the Policy Proceeds provision.)

If You surrender the Policy within 31 days after the policy anniversary date, the Cash Surrender Value of Your Policy will not be less than the Cash Surrender Value on that anniversary date, adjusted for any Loans taken and any partial withdrawals made during the 31-day period.

We may defer payment of the full Cash Surrender Value for up to six months. If we defer payment for 30 days or more, we will pay interest, if required by law, at a rate at least equal to the minimum required by the state governing this Policy.

**Partial Withdrawals**

On every policy anniversary we will determine the maximum amount available to You for partial withdrawal. The maximum withdrawal amount is the greater of:

1. The Cash Surrender Value at the beginning of that policy year times the Withdrawal Percentage Limit, as shown on the Policy Specifications page; and
2. The previous year's maximum withdrawal amount.

After the first policy year, on any monthly anniversary You may make a partial withdrawal of cash, upon request in a form acceptable to us at our Designated Office. The amount of this withdrawal may not exceed the lesser of:

1. The Cash Surrender Value available on that date; and
2. The maximum withdrawal amount determined on the prior policy anniversary reduced by the total amount of partial withdrawals taken since that policy anniversary.

No partial withdrawal will be processed which would reduce the Cash Surrender Value to less than an amount that would cover two Monthly Deductions.

**Continuation of Insurance**

If all premium payments cease and the Coverage Continuation Benefit is not in effect, the insurance provided under this Policy, including benefits provided by any rider attached to this Policy, will continue in accordance with the provisions of this Policy for as long as the Cash Surrender Value is sufficient to cover the Monthly Deductions.

**Basis of Computation**

The minimum cash values, net single premiums, net level premiums, and guaranteed cost of insurance rates are based on the mortality table and the Cash Value Guaranteed Interest Rate as shown on the Policy Specifications page.

All values are at least equal to those required by any applicable law of the state that governs Your Policy. We have filed a detailed statement, if required, of the method of calculating cash values and reserves with the insurance supervisory official of that state.

**Coverage Continuation Benefit Value**

**Please note: The Coverage Continuation Benefit Value is not available in cash. It does not affect the Cash Value of Your Policy. Its purpose is only to determine the status of this Benefit.**

The Coverage Continuation Benefit Value on the Interest Crediting Start Date equals:

1. The initial premium received less the appropriate Coverage Continuation Benefit Percent of Premium Charge; less
2. The Coverage Continuation Charges and any rider charges (unless otherwise provided for in the rider) due from the Policy Date through the Interest Crediting Start Date.

The Coverage Continuation Benefit Value on any day after the Interest Crediting Start Date equals:

1. The Coverage Continuation Benefit Value on the preceding day accumulated at the appropriate Coverage Continuation Accumulation Factor; plus
2. Any premiums received that day less the appropriate Coverage Continuation Benefit Percent of Premium Charge; less
3. Any partial withdrawal made on that day; less
4. Any Surrender Charge taken on that day due to a decrease in Face Amount or partial withdrawal times the appropriate Coverage Continuation Surrender Charge Percentage shown on the Table of Coverage Continuation Factors page; less
5. If that day is a monthly anniversary, the Coverage Continuation Charges and rider charges (unless otherwise provided for in the rider) to cover the policy month which starts on that day; less
6. If it is the end of the last day of a policy year, any Coverage Continuation Benefit Risk Adjustment Charge

The Coverage Continuation Benefit Value will no longer be calculated once the Coverage Continuation Benefit Reactivation Period has expired.

Your Policy's annual report will provide You with the status of the Coverage Continuation Benefit

**Coverage Continuation Benefit Percent of Premium Charge**

The Coverage Continuation Benefit Percent of Premium Charge will be deducted from each premium based on the amount of the premium and the year in which You pay the premium. The charges as a percent of premium are shown on the Table of Coverage Continuation Factors page.

**Coverage Continuation Charges**

The Coverage Continuation Charges for the Initial Face Amount of the Policy are shown on the Table of Coverage Continuation Factors page and described below These charges and Factors are guaranteed as long as no policy changes are made.

You will receive a new Table of Coverage Continuation Factors page for each requested increase in Face Amount The Coverage Continuation Charges for that increase will be shown on that page and are guaranteed provided the Coverage Continuation Benefit remains in effect and no further policy changes are made

Coverage Continuation Charges equal the sum of the following:

1. The Monthly Coverage Continuation Benefit Expense Charge; plus
2. The Monthly Coverage Continuation Benefit Policy Charge; plus
3. The Monthly Coverage Continuation Benefit Cost of Insurance.

**Coverage Continuation Benefit Risk Adjustment Charge**

**The Coverage Continuation Benefit Risk Adjustment Charge** will be deducted from the Coverage Continuation Benefit Value at the end of the last day of each policy year, if applicable. This Charge will not be assessed if the Coverage Continuation Benefit Value plus the Coverage Continuation Expected Threshold Amount paid annually is sufficient to guarantee coverage to Age 100.

This Charge will be calculated as follows:

1. The sum of the Coverage Continuation Expected Threshold Amount from the Policy Date to the end of the last day of the policy year (The Coverage Continuation Expected Threshold Amount is shown on the Table of Coverage Continuation Factors page.); plus
2. The sum of rider charges since the Policy Date; less
3. The sum of actual premiums paid since the Policy Date; plus
4. The sum of partial withdrawals since the Policy Date.
5. If (1) + (2) - (3) + (4) is greater than zero, then the Risk Adjustment Charge will equal:
   a. The applicable Risk Adjustment Percent (which is shown on the Table of Coverage Continuation Factors page); times
   b. The amount calculated in (5) above; less
   c. The sum of previous Risk Adjustment Charges assessed.

   If (1) + (2) - (3) + (4) is less than or equal to zero, then the Risk Adjustment Charge will equal $0.

**Coverage Continuation Accumulation Factors**

The Accumulation Factors used to calculate the Coverage Continuation Benefit Value are shown on the Table of Coverage Continuation Factors page and are guaranteed.

**Grace Period For Coverage Continuation Benefit**

If on any monthly anniversary date the Coverage Continuation Benefit Value is insufficient to pay the Coverage Continuation charges, a Grace Period of 62 days will be allowed for the payment of an amount sufficient to keep the Coverage Continuation Benefit in effect. See the Grace Period provision.

If we do not receive the amount required by the end of the Grace Period For Coverage Continuation Benefit, the Coverage Continuation Benefit will terminate. No further calculations of the Coverage Continuation Benefit Value or deductions of Coverage Continuation Charges will occur, unless You reactivate Your Coverage Continuation Benefit as described below.

The Coverage Continuation Benefit cannot be reinstated if Your policy is reinstated.

**Reactivation of Coverage Continuation Benefit**

If Your Policy is in force and Your Coverage Continuation Benefit has terminated, You can reactivate the Coverage Continuation Benefit within the Coverage Continuation Benefit Reactivation Period shown on the Table of Coverage Continuation Factors page provided that the premium required to reactivate this Benefit does not disqualify this Policy as life insurance. A notice will be sent to Your last known address and to any assignee on record at the end of the Grace Period for the Coverage Continuation Benefit. In order to reactivate the Coverage Continuation Benefit within the Reactivation Period we will require a premium sufficient to make the Coverage Continuation Benefit Value greater than zero and greater than any Policy Loan Balance. You may contact us for additional information. If the premium is not paid within the Coverage Continuation Benefit Reactivation Period, the Reactivation Period will terminate and Your Coverage Continuation Benefit cannot be reactivated.

## 10. PAYMENT OPTIONS

**Single Life Income**

Monthly payments will be made during the lifetime of the Payee.

**Single Life Income - 10 Year Guaranteed Payment Period**

Monthly payments will be made during the lifetime of the Payee with a guaranteed payment period of 10 years.

**Joint and Survivor Life Income**

Monthly payments will be made:

1. While either of two Payees is living, called "Joint and Survivor Life Income", or
2. While either of two Payees is living, but for at least 10 years, called "Joint and Survivor Life Income, 10 Years Certain".

**Other Frequencies and Options**

Other Payment Options and payment frequencies may be arranged with us.

## 11. LIFE INCOME TABLES

**Minimum Payments under Payment Options**

Monthly payments for each $1,000 applied will not be less than the amounts shown in the following Tables. On request, we will provide additional information about amounts of minimum payments.

**Single Life Income**

| Payee's Age | Life Income | | 10 Year Guaranteed Payment Period | |
|---|---|---|---|---|
| | Male | Female | Male | Female |
| 50 | $2.83 | $2.65 | $2.82 | $2.64 |
| 55 | 3.11 | 2.89 | 3.10 | 2.88 |
| 60 | 3.47 | 3.19 | 3.44 | 3.18 |
| 65 | 3.92 | 3.59 | 3.87 | 3.56 |
| 70 | 4.54 | 4.11 | 4.43 | 4.05 |
| 75 | 5.40 | 4.83 | 5.13 | 4.69 |
| 80 | 6.57 | 5.86 | 5.96 | 5.53 |
| 85 | 8.20 | 7.37 | 6.87 | 6.52 |
| 90 & over | 10.48 | 9.62 | 7.72 | 7.52 |

**Joint and Survivor Life Income**

| Age of Both Payees | Joint and Survivor | Joint and Survivor, 10 Years Certain |
|---|---|---|
| | One Male and One Female | One Male and One Female |
| 50 | $2.43 | $2.43 |
| 55 | 2.63 | 2.63 |
| 60 | 2.87 | 2.87 |
| 65 | 3.17 | 3.17 |
| 70 | 3.58 | 3.57 |
| 75 | 4.12 | 4.11 |
| 80 | 4.87 | 4.82 |
| 85 | 5.94 | 5.76 |
| 90 & over | 7.47 | 6.84 |

Name of Insured/Annuitant/Applicant
MOEUN SOK

Application Number:

Agency
821-1

Date of this Form
02/01/2006

District/Branch
97J

Policy/Contract Number
206020342

## Application Amendment




To ● Metropolitan Life Insurance Company
○ Metropolitan Insurance and Annuity Company
○ Security First Life Insurance Company

I amend the application referred to above, as follows:

PART 1. SECTION 6. QUESTION 1. CHANGE COVERAGE AMOUNT $400,000

**This application amendment** is part of the application referred to above and is subject to the agreements in that application. The application and this amendment are part of the policy/contract to which they are attached. To the best of my knowledge and belief, the statements and answers in the application as amended by this form are true and complete as of the date this form is signed. There are no facts or circumstances which would require a change in the answers in the application, except as shown above.

| WITNESS (Licensed Resident Agent) | Place | Mo. Day Yr. | Signature |
|---|---|---|---|
| Witness to Signature (A) | | | (A) Insured/Annuitant/Applicant |
| Witness to Signature (B) | | | (B) Spouse (if Spouse signed application) |
| Witness to Signature in (C) or (D) | | | (C)Owner (if other than (A) above) |

0206020342 0318

**If Owner is a firm, corporation or trust, enter full name on line (C ) and have one or more partners, officers or trustees sign on line (D), and give their titles.**

(D)________________

________________

Return signed forms to :




0843-82-A (8-98)

205251844

**MetLife®**

☐ Metropolitan Life Insurance Company
☐ Metropolitan Insurance and Annuity Company
One Madison Avenue
New York, NY 10010-3690

☐ Security First Life Insurance Company
1300 Delaware Trust Building
P.O. Box 25130
Wilmington, DE 19899

To: Underwriting & Issue
☐ Home Office
☐ ______________ Head Office

For H.O. Use Only

From District/Branch 9 7 J. MANSFIELD & ASSO. Agency No./Index 821-1 Representative SUMCHAI PREEYAPHANICH

## Application for Reissue of a New Policy

Name(s) of Insured(s) (Full First Name, Middle Initial, Last Name): MOEUN SOK

Present Policy Number: 205 264 410 USU

Please reissue present policy with changes as indicated below.

| Item | Amended Answer | Item | Amended Answer |
|---|---|---|---|
| Plan | GAUL | Complete for Universal Life Policies: Death Benefit: | ☒ Opt A ☐ Opt B ☐ Opt C |
| Date (Do not request a future issue date) | Current | Planned Premium Amount | $ 1058.71 - m - |
| Initial or Face Amount of Insurance | $ 400,000 Insurance on Proposed Insured | Excess Premium Amount Guarantee to Age (For FPMLI only) | $ ______ ☐ 65 ☐ 75 ☐ 85 |
| Disability Waiver of Premiums Benefit | ☐ With Benefit ☒ Without Benefit | Disability Waiver of Monthly Deduction | ☐ With Benefit ☐ Without Benefit |
| | | Disability Waiver of Specified Premium | $ ______ |
| Accidental Death Benefit | ☐ With Benefit | | ☒ Without Benefit |
| Family Income Benefit | ☐ With $ ..... per month to ..... th Policy Anniversary | | ☒ Without Benefit |
| Level Term Benefit | With ______ times Face Amount or Amount $ ______ ☐ 10 Years ☐ 15 Years | | ☒ Without Benefit |
| Guarantee Issue Rider | With Amount $ ______ | | ☒ Without Benefit |
| Income Benefit on Spouse | ☐ With $ ..... per month to ..... th Policy Anniversary | | ☒ Without Benefit |
| Spouse Term Benefit | With Amount $ ______ | | ☒ Without Benefit |
| Children's Term Benefit | With Amount $ ______ | | ☒ Without Benefit |
| Other Benefits | | | |
| Date of Birth | Month | Day | Year |

I do not accept the present policy as offered; I request that the policy be reissued as shown in this Application. Any policy issued as a result of this application will be based on the statements and answers in the application for the present policy except as amended by this form.

I understand that any Temporary Insurance provided under the application for the present policy has ended. Unless I request a refund, the Company checked above will provisionally hold any premium paid for the present policy and, if such policy is reissued, will apply it to the reissued policy. The Company will have no liability under this application, until a reissued policy is delivered personally to the owner, and the full first premium due is paid. The policy will then be in effect as of its date of issue, but it will not be in effect unless at the time it is delivered:

(a) the condition of health of each person to be insured, and the Applicant if the Applicant's Waiver of Premiums Benefit is applied for, is the same as given in the application for the policy referred to above; and

(b) no person to be insured nor the Applicant if the Applicant's Waiver of Premiums Benefit is applied for, has received any medical advice or treatment from a physician or other practitioner since the date of that application.

To the best of my knowledge and belief, the statements and answers in the application as amended by this form are true and complete as of the date this form is signed. There are no facts or circumstances which would require a change in the answers in the application, except as shown above.

| Witness (Licensed Resident Agent) | Place | Mo. Day Yr. | Signature |
|---|---|---|---|
| Witness to signature [signature] | BROOKFIELD, IL | 01.15.06 | MOEUN SOK (A) Proposed Insured #1/Applicant |
| Witness to signature (B) | | | (B) Proposed Insured #2/Spouse Parent, Guardian or Person Liable for Child's Support (if other than applicant) |
| Witness to Signatures in (C) or (D) [signature] | BROOKFIELD IL | 01.15.06 | [signature] (C) Owner (if other than (A) above) |

If Owner is a firm or corporation, enter on line (C) full business name, and have one or more partners or officers (other than Proposed Insured) sign on line (D), and give their titles. (D) ______________

02193 (1298)

See instructions on next page

16000073400 (1298) Printed in U.S.A

hinmu

PART I

Check the appropriate company.

Office Use Only: 205251844

1

**Application for Individual and Multi-Life Life Insurance**

☐ Metropolitan Life Insurance Company 200 Park Avenue, New York, NY 10166

☐ MetLife Investors Insurance Company 13045 Tesson Ferry Road, St. Louis, MO 63128

☐ New England Life Insurance Company 501 Boylston Street, Boston, MA 02116-3700

☐ General American Life Insurance Company 13045 Tesson Ferry Road, St. Louis, MO 63128

☒ MetLife Investors USA Insurance Company 222 Delaware Avenue, Suite 900, PO Box 25130, Wilmington, DE 19899

*The Company indicated above is referred to as "the Company".*

## SECTION 1 Proposed Insured(s)

*If less than 3 years, add prior residence address in Additional Information Section, Page 13.

**NOTE:** P.O. Box numbers **CANNOT** be accepted for street addresses.

### 1. PROPOSED INSURED #1

Name FIRST MOEUN MIDDLE LAST SOK

Street 4634 RAYMOND AVE.

City BROOKFIELD State IL Zip 60513

Years at this address* 11 SSN/Tax ID 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

Home Phone Number (708) 387-3674

Work Phone Number ( )

Cell Phone Number (708) 218-2460

Best time to call: FROM 11.00 AM TO 10.00 PM ☒ Daytime ☐ Evening

Best number to call: ☐ Home ☐ Work ☒ Cell

Driver's License Number ____ State ____

License Issue Date ____ License Expiration Date ____

Marital Status ☐ Single ☐ Married ☐ Separated ☐ Divorced ☒ Widowed

Date of Birth MONTH 12 DAY 01 YEAR 1931 State/Country of Birth CAMBODIA

Sex ☐ Male ☒ Female Net Worth $ 1,500,000

Annual Earned Income $ 100000 Annual Unearned Income $ ____

Employer's Name Retired

Street 4634 Raymond Ave

City Brookfield State IL Zip 60513

Position/Title/Duties RETIRED Length of Employment ____

### 2. PROPOSED INSURED #2

Life 2, Spouse, Designated Life, Person to be covered under Applicant's Waiver of Premium Benefit

Relationship to Proposed Insured #1 ____

**If address is same as Proposed Insured #1, write "SAME".**

Name FIRST ____ MIDDLE ____ LAST ____

Street ____

City ____ State ____ Zip ____

Years at this address* ____ SSN/Tax ID ____

Home Phone Number ( )

Work Phone Number ( )

Cell Phone Number ( )

Best time to call: ☐ Daytime ☐ Evening

Best number to call: ☐ Home ☐ Work ☐ Cell

Driver's License Number ____ State ____

Issue Date ____ Expiration Date ____

Marital Status ☐ Single ☐ Married ☐ Separated ☐ Divorced ☐ Widowed

Date of Birth MONTH ____ DAY ____ YEAR ____ State/Country of Birth ____

Sex ☐ Male ☐ Female Net Worth $ ____

Annual Earned Income $ ____ Annual Unearned Income $ ____

Employer's Name ____

Street ____

City ____ State ____ Zip ____

Position/Title/Duties ____ Length of Employment ____

**ADDITIONAL INSUREDS:** See Supplemental Forms Package.

ENB-7-05-IL FF

(05/05)



If more space is needed, please use the Additional Information Section, Page 13.

## SECTION 1 Proposed Insured(s)
*(continued)*

**3. DEPENDENT SPOUSE or MINOR**

**A.** Are any persons to be insured a dependent spouse? ☐ YES ☒ NO

**IF YES,** please provide:

Amount of **existing** insurance on spouse of Proposed Insured $______

Amount of insurance **applied for** on spouse of Proposed Insured $______

**B. 1.** Are any persons to be insured a dependent minor? ☐ YES ☒ NO

**IF YES,** please provide:

Amount of **existing** insurance on father/guardian $______

Amount of insurance **applied for** on father/guardian $______

Amount of **existing** insurance on mother/guardian $______

Amount of insurance **applied for** on mother/guardian $______

**2.** Are all siblings of this dependent minor equally insured? ☐ YES ☒ NO

**IF NO,** please provide details:

## SECTION 2 Existing or Applied For Insurance

**IF YES**
Some states require the completion of an additional form. See instructions on the cover of the Replacement Forms Package.

**1. EXISTING or APPLIED FOR INSURANCE**

**A.** Do any of the Proposed Insureds or Owners have any exisitng or applied for life insurance (L) or annuity (A) contracts with this or any other company?

**Proposed Insured** ☒ YES ☐ NO
**Owner** ☒ YES ☐ NO

**IF YES,** provide details on Proposed Insured only:

| Proposed Insured (#1, #2, other) | Company | Type (L, A) | Amount of Insurance | Year of Issue | Accidental Death Amount | Existing or Applied for |
|---|---|---|---|---|---|---|
| # 1 | METLIFE | L | 355,000 | 1992 | – | ☒ E ☐ A |
| # 1 | METLIFE | L | 300,000 | 1996 | – | ☒ E ☐ A |
| # 1 | METLIFE | L | 550,000 | 1999 | – | ☒ E ☐ A |
| | SEE PAGE 13 | | | | | ☐ E ☐ A |
| | | | | | | ☐ E ☐ A |

**B.** Do any of the Proposed Insureds have any application for disability insurance (D) or critical illness insurance (C) or long term care insurance (LTC) applied for or planned with **THIS** Company or its affiliates? ☐ YES ☒ NO

**IF YES,** provide: Proposed Insured(#1, #2, other) ______ Type (D,C,LTC) ______

Applicable replacement and 1035 exchange forms can be found in Replacement Forms Package.

**2. REPLACEMENT**

**A.** In connection with this application has there been, or will there be with this or any other company any: surrender transaction; loan; withdrawal; lapse; reduction or redirection of premium/consideration; or change transaction (except conversions) involving an annuity or other life insurance? ☒ YES ☐ NO

**IF YES,** complete Replacement Questionnaire and Disclosure **AND** any other state required replacement forms.

**B.** Is this an exchange under Internal Revenue code section 1035? ☐ YES ☒ NO

**IF YES,** complete the 1035 Exchange Authorization **for each affected policy**

If more space is needed, please use the Additional Information Section, Page 13.

## SECTION 3 Owner

**IDENTITY of PRIMARY OWNER** (Check one)
- ☐ Proposed Insured #1 **Complete Question 1 ONLY.**
- ☐ Proposed Insured #2 **Complete Question 1 ONLY.**
- ☒ Other Person **Complete Questions 1 and 2.**
- ☐ Entity **Complete Question 3 ONLY.**

**1. OWNER IDENTIFICATION**

**If U.S. Driver's License already provided, no further information is required.**

☐ U.S. Driver's License already provided on page 1 (Proposed Insured)

☒ U.S. Driver's License ☐ Green Card ☐ Passport ☐ Other GOVERNMENT ISSUED

Issuer of ID IL ID Issue Date 03.18.03

ID Reference Number C500-7815-7728 ID Expiration Date 05.04.07

**2. OWNER other than PROPOSED INSURED(S)**

**NOTE:** P.O. Box numbers **CANNOT** be accepted for street addresses.

Name FIRST SAMANTHA MIDDLE C LAST CAHUN

Street 4634 RAYMOND AVE.

City BROOKFIELD State IL Zip 60513

Phone Number (708) 219-8460

Citizenship US Country of Permanent Residence

Date of Birth MONTH 05 DAY 04 YEAR 1957 SSN/Tax ID 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

Relationship to Proposed Insured(s) CHILD

Employer's Name WILD EAGLE INC.

Street 4634 RAYMOND AVE.

City BROOKFIELD State IL Zip 60513

Position/Title/Duties MANAGER Length of Employment 9YR.

☐ Check if you wish ownership to revert to Insured upon Owner and Contingent Owner's death.

**IF CUSTODIAN** is acting on behalf of a minor under UTMA/UGMA, please complete Additional Owner Form in Supplemental Forms package.

**3. ENTITY/TRUST AS OWNER**

Entity/Trust Type: ☐ C Corporation ☐ Partnership ☐ S Corporation ☐ Sole Proprietorship ☐ LLC ☐ Trust

Tax ID Number ______ Date of Trust MONTH DAY YEAR

Name of Entity/Trust ______

Name of Trustee(s) ______

Street ______

City ______ State ______ Zip ______

Proposed Insured(s) Relationship to Entity ______

Nature of Business ______ Business Phone ______

Is entity publicly traded? ☐ YES ☐ NO

**IF NO,** please supply one of the following documents: *(Indicate which one you are supplying.)*
- ☐ Articles of Incorporation/Government Issued Business License
- ☐ LLC Operating Agreement
- ☐ Partnership Agreement
- ☐ Government Issued Certificate of Good Standing

**IF TRUST** Complete Trust Certification form in Supplemental Forms Package.

**IF BUSINESS** Complete Business Supplement form in Supplemental Forms Package.

If more space is needed, please use the Additional Information Section, Page 13.

## SECTION 4 Beneficiary(ies)

**NOTE:** Federal law states if you leave someone with special needs any assets over $2,000, they may lose eligibility for most government benefits.

**Contingent Beneficiaries ONLY**
☐ Check here if you want any and all living and future natural or adopted children of Proposed Insured #1 to be included as Contingent Beneficiaries. Name any living children as beneficiaries below.

☐ **Check here AND DO NOT COMPLETE if Primary Beneficiary is same as Trust or Entity Owner.**

If there is a court appointed legal Guardian for Beneficiary, provide name and address in Additional Information Section, Page 13.

☒ **PRIMARY**

Name FIRST SAMANTHA MIDDLE C LAST CHHUN
Street 4634 RAYMOND AVE.
City BROOKFIELD State IL Zip 60513
Date of Birth MONTH 05 DAY 04 YEAR 1957 SSN/Tax ID NOT REQUIRED
Relationship to Proposed Insured(s) CHILD
Percent of Proceeds ____ (Multiple Beneficiaries will receive an equal percentage of proceeds unless otherwise instructed.)

☐ **PRIMARY** ☐ **CONTINGENT**

Name FIRST ____ MIDDLE ____ LAST ____
Street ____
City ____ State ____ Zip ____
Date of Birth MONTH ____ DAY ____ YEAR ____ SSN/Tax ID NOT REQUIRED
Relationship to Proposed Insured(s) ____
Percent of Proceeds ____ (Multiple Beneficiaries will receive an equal percentage of proceeds unless otherwise instructed.)

☐ **PRIMARY** ☐ **CONTINGENT**

Name FIRST ____ MIDDLE ____ LAST ____
Street ____
City ____ State ____ Zip ____
Date of Birth MONTH ____ DAY ____ YEAR ____ SSN/Tax ID NOT REQUIRED
Relationship to Proposed Insured(s) ____
Percent of Proceeds ____ (Multiple Beneficiaries will receive an equal percentage of proceeds unless otherwise instructed.)

## SECTION 5 Custodian acting for Minor Beneficiary(ies)

Custodian's name FIRST ____ MIDDLE ____ LAST ____
as custodian for ____ NAME(S) OF MINOR(S)
under the ____ NAME OF STATE ____ Uniform Transfers [or Gifts] to Minors Act.
Street ____
City ____ State ____ Zip ____
Relationship to Minor(s) ____

ENB-7-05-IL FF

(05/05)

If more space is needed, please use the Additional Information Section, Page 13. 5

## SECTION 6 Information Regarding Insurance Applied for

**1. PRODUCT & FACE AMOUNT**

Product Name GAUL

Face Amount $ 200,000 (Complete Personal Financial Supplement if $1,000,000 or more.)

☐ Group Conversion*

Optional Benefits and Riders:

☐ Guaranteed Survivor Plus Purchase Options (GSPO+)*
Option Period(s): COMPLETE FOR FIRST DESIGNATED LIFE $

☐ Guaranteed Survivor Income Benefit (GSIB)

☐ Term Rider *Specify:* $

☐ Life Guaranteed Purchase Option (LGPO)

☐ Acceleration of Death Benefit Rider (ADBR)*

☐ Enricher Options (PAIR/VABR)* *Specify:* $

☐ Long Term Care Guaranteed Purchase Option (LTC-GPO)

☐ Disability Waiver (DW) *Specify:* $

☐ Other

*Complete these forms, if applicable:
- ADBR
- Enricher/Equity Additions
- Group Conversion
- GSPO+

These forms can be found in the Supplemental Forms Package.

Special Requests/Other:

☐ Save Age ☐ Specific Policy Date

☐ Other

Check here if ☐ alternate **OR** ☐ additional policy is requested and provide full details below. Include **SIGNED & DATED** illustration for each policy requested.

**2. ADDITIONAL INFORMATION for WHOLE LIFE PRODUCTS**

Do you request automatic payment of premium in default by Policy Loan *(for traditional plans)*, if available? ☐ YES ☐ NO

Dividend Options:

☐ Paid-up Additions ☐ VAI Equity Additions* ☐ Premium Reduction

☐ Cash ☐ Accumulations/DWI

☐ Other

**3. ADDITIONAL INFORMATION for UNIVERSAL LIFE/VARIABLE LIFE PRODUCTS**

For Variable Life, also complete Variable Life Supplement

Planned Premium Amount: Year 1 $ 625/mo Excess/Lump Sum $

Duration of premium payments 120

Planned annual unscheduled payment *(if applicable)*: $

Renewal Premium *(if applicable)*: $ 625/mo

Death Benefit Option/Contract Type A

Definition of Life Insurance Test: ☐ Guideline Premium Test ☐ Cash Value Accumulation Test *(if available under policy applied for)*

Guaranteed to age: *(VUL only)* ☐ 65 ☐ 75 ☐ 85 ☐ 5 years ☐ Other

**4. ADDITIONAL INFORMATION for QUALIFIED PLANS**

Qualified/Non-Qualified Plan number EGN/PENSION NUMBER

If more space is needed, please use the Additional Information Section, Page 13.

## SECTION 7 Payment Information

If **Monthly Electronic Payment** is chosen, complete Electronic Payment Account Agreement.

**1. PAYMENT MODE** *(Check one.)*

**Direct Bill:** ☐ Annual ☐ Semi-Annual ☐ Quarterly

**Electronic Payment:** ☒ Monthly

**Special Account:** ☐ Government Allotment ☐ Salary Deduction

Additional Details:

**2. SOURCE of CURRENT and FUTURE PAYMENTS** *(Check all that apply.)*

☒ Earned Income ☐ Mutual Fund/Brokerage Account ☐ Money Market Fund ☐ Savings

☐ Use of Values in another Life Insurance/Annuity Contract ☐ Certificate of Deposit

☐ Loans ☐ Other

**NOTE:**
It is Company Policy to not accept cash, traveler's checks, or money orders as a form of payment for Variable Life Products.

**3. PAYMENT**

Amount collected with application $ 625-
*(Must equal at least one monthly premium.)*

Premium Payor:

☐ Proposed Insured #1 ☐ Proposed Insured #2 ☒ Primary Owner

☐ Other

Name

Relationship to Proposed Insured(s) and Owner

Reason this person is the Payor

**4. BILLING ADDRESS INFORMATION**

☐ Proposed Insured #1 Address ☐ Proposed Insured #2 Address

☒ Primary Owner's Address

☐ Other Premium Payor's/Alternate Billing Address *(Provide details here.)*

Street

City State Zip

☐ Special Arrangements

## E-Mail Addresses
*(optional)*

Proposed Insured #1

Proposed Insured #2

Primary Owner

Joint/Contingent Owner

If more space is needed, please use the Additional Information Section, Page 13.

## SECTION 8 General Risk Questions

The following questions are to be answered for **ALL** persons to be insured, including those covered by any riders applied for.

1. Within the past three years has **ANY** person to be insured flown in a plane other than as a passenger on a scheduled airline or have plans for such activity within the next year? ☐ YES ☒ NO

**IF YES,** complete a separate Aviation Supplement for each applicable Proposed Insured.

2. Within the past three years has **ANY** person to be insured participated in or intend to participate in **any** of the following:
   Underwater sports - (SCUBA diving, skin diving, or similar activities);
   Sky sports - (skydiving, hang gliding, parachuting, ballooning or similar activities);
   Racing sports - (motorcycle, auto, motor boat or similar activities);
   Rock or mountain climbing or similar activities;
   Bungee jumping or similar activities? ☐ YES ☒ NO

**IF YES,** complete a separate Avocation Supplement for each applicable Proposed Insured.

If you need more space, please use the Additional Information Section, Page 13.

3. Within the **next two years** does **ANY** person to be insured **intend to travel** or **reside** outside the U.S. or Canada? ☐ YES ☒ NO

**IF YES,** for each occurence, please provide Proposed Insured, duration, country and purpose.

4. **CITIZENSHIP/RESIDENCY**

**A.** Are all persons to be insured U.S. Citizens? ☐ YES ☒ NO

**IF NO,** please provide details:

Proposed Insured(s) MOEUN SOK Country of Citizenship CAMBODIA

Visa Type/ID PERMANENT RESIDENT Visa Number A 025 195 391

Expiration Date N/A Length of Time in U.S. 24 YRS

☐ Check here if currently applying for a Social Security number.

**B.** Are all persons to be insured permanent residents of the United States? ☒ YES ☐ NO

**IF NO,** please provide details:

Proposed Insured(s) ____

Country of Residence ____

(05/05)

If more space is needed, please use the Additional Information Section, Page 13.

## SECTION 8 General Risk Questions

*(continued)*

The following questions are to be answered for **ALL** persons to be insured, including those covered by any riders applied for.

**5.** In the last five years, has **ANY** person to be insured used tobacco products (e.g., cigarettes; cigars; pipes; smokeless tobacco; chew; etc.) or nicotine substitutes (e.g., patch, gum)? ☐ YES ☒ NO

**IF YES,** please provide details:

Proposed Insured(s) ______ Date Last Used ______

Type ______

Amount/Frequency ______

If you need more space, please use the Additional Information Section, Page 13.

**6.** Has **ANY** person to be insured: **EVER** had a driver's license suspended or revoked; **EVER** been convicted of DUI or DWI; or had, in the last five years, any moving violations? ☐ YES ☒ NO

**IF YES,** please provide Proposed Insured, date and violation.

Proposed Insured(s) ______

Details: ______

**7.** Has any person to be insured **EVER** had an application for life, disability income or health insurance declined, postponed, rated or modified or required an extra premium? ☐ YES ☒ NO

**IF YES,** please provide details:

Proposed Insured(s) ______

Details: ______

**8.** Are all persons to be insured: actively at work; or a homemaker performing regular household duties; or a student attending school regularly? ☒ YES ☐ NO

**IF NO,** please provide details:

Proposed Insured(s) ______

Details: ______

Please answer these questions **only if requesting the Long Term Care Guaranteed Purchase Option Rider.**

**9. LONG TERM CARE GUARANTEED PURCHASE OPTION RIDER**

**A.** Does any person to be insured under this rider currently use any mechanical equipment such as: a walker; a wheelchair; long leg braces; or crutches? ☐ YES ☐ NO

**IF YES,** please note which and the reason.

______

Proposed Insured(s) ______

**B.** Does any person to be insured under this rider need any assistance or supervision with any of the following activities: bathing; dressing; walking; moving in/out of a chair or bed; toileting; continence; or taking medication? ☐ YES ☐ NO

Proposed Insured(s) ______

**PART II** If more space is needed, please use the Additional Information Section, Page 13. 

## SECTION 1 Physician Information

**PLEASE NOTE:** If FULL PARAMEDICAL exam is required, completion of Medical questions is **OPTIONAL** but will expedite your application.

**1. PHYSICIAN**

Please provide name of doctor, practitioner, or health care facility who can provide the most complete and up to date information concerning the present health of the Proposed Insured(s).

**Physician Information for Proposed Insured #1**

☐ Check here if no doctor, practitioner or health care facility is known.

Physician Name ______ Phone Number (312) 275-8333

Name of Practice/Clinic INDOCHINA MEDICAL CLINIC Fax Number ( ) ______

Street 4826 N. BROADWAY

City CHICAGO State IL Zip 60640

Date Last Consulted 11 23 15 (MONTH DAY YEAR) Reason ROUTINE CHECK UP – ALL OKAY

Findings, treatment given, medication prescribed. If None, check here ☐.

______

______

**Physician Information** ☐ **Proposed Insured #1** ☐ **Proposed Insured #2**

☐ Check here if no doctor, practitioner or health care facility is known.

Physician Name ______ Phone Number ( ) ______

Name of Practice/Clinic ______ Fax Number ( ) ______

Street ______

City ______ State ____ Zip ______

Date Last Consulted MONTH DAY YEAR Reason ______

Findings, treatment given, medication prescribed. If None, check here ☐.

______

______

## SECTION 2 Medical Questions

**1. HEIGHT/WEIGHT**

Proposed Insured #1 Height 5-1 Weight 140

Proposed Insured #2 Height ______ Weight ______

Has any Proposed Insured experienced a change in weight (greater than 10 pounds) in the past 12 months? ☐ YES ☒ NO

**IF YES,** specify:

Proposed Insured #1 Pounds lost ______ Pounds gained ______

Proposed Insured #2 Pounds lost ______ Pounds gained ______

Reason ______

If more space is needed, please use the Additional Information Section, Page 13.

## SECTION 2 Medical Questions

*(continued)*

**PLEASE NOTE:** If FULL PARAMEDICAL exam is required, completion of Medical questions is **OPTIONAL** but will expedite your application.

**2.** Has a parent (P) or sibling (S) of any person to be insured ever had: heart disease; coronary artery disease; high blood pressure; diabetes; or mental illness? ☐ YES ☒ NO

**IF YES,** indicate below:

| Proposed Insured (#1, #2) | Relationship to Proposed Insured | Age if Living | Age at Death | State of Health, Specific Conditions, Cause of Death |
|---|---|---|---|---|
| | ☐ P ☐ S | | | |
| | ☐ P ☐ S | | | |
| | ☐ P ☐ S | | | |
| | ☐ P ☐ S | | | |

**3.** Has **ANY** person to be insured **EVER** received treatment, attention, or advice from any physician, practitioner or health facility for, or been told by any physician, practitioner or health facility that he/she had:

| | Proposed Insured #1 YES | Proposed Insured #1 NO | Proposed Insured #2 YES | Proposed Insured #2 NO | Other Proposed Insured YES | Other Proposed Insured NO |
|---|---|---|---|---|---|---|
| **A** High blood pressure; chest pain; heart attack; or any other disease or disorder of the heart or circulatory system? | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| **B.** Asthma; bronchitis; emphysema; sleep apnea; shortness of breath; or any other disease or disorder of the lungs or respiratory system? | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| **C.** Seizures; stroke; paralysis; Alzheimer's disease; multiple sclerosis; memory loss; Parkinson's disease; progressive neurological disorder; headaches; or any other disease or disorder of the brain or nervous system? | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |

**Details:** If you **answered YES** to any of the above questions, please provide details here.

| Question Number | Proposed Insured Name | Name of Physician Address if not already provided | Date/Duration of Illness | Diagnosis/Severity Medications/Treatment |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |




ENB-7-05-IL FF

(05/05)

If more space is needed, please use the Additional Information Section, Page 13. 

## SECTION 2 Medical Questions

*(continued)*

**PLEASE NOTE:** If FULL PARAMEDICAL exam is required, completion of Medical questions is **OPTIONAL** but will expedite your application.

3. Has **ANY** person to be insured **EVER** received treatment, attention, or advice from any physician, practitioner or health facility for, or been told by any physician, practitioner or health facility that he/she had:

| | Proposed Insured #1 YES | Proposed Insured #1 NO | Proposed Insured #2 YES | Proposed Insured #2 NO | Other Proposed Insured YES | Other Proposed Insured NO |
|---|---|---|---|---|---|---|
| **D.** Ulcers; colitis; hepatitis; cirrhosis; or any other disease or disorder of the liver; gallbladder; stomach; or intestines? | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| **E.** Any disease or disorder of: the kidney; bladder; or prostate; or blood, protein or pus in the urine? | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| **F.** Diabetes; thyroid disorder; or any other endocrine problem(s)? | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| **G.** Arthritis; gout; or disorder of the muscles, bones or joints? | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| **H.** Cancer; tumor; polyp; cyst or any skin disease or disorder? | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| **I.** Anemia; leukemia; or any other disorder of the blood or lymph glands? | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| **J.** Depression; stress; anxiety; or any other psychological or emotional disorder or symptoms? | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| **K.** Any disease or disorder of the eyes, ears, nose, or throat? | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |

**Details:** If you **answered YES** to any of the above questions, please provide details here.

| Question Number | Proposed Insured Name | Name of Physician Address if not already provided | Date/Duration of Illness | Diagnosis/Severity Medications/Treatment |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |



**Additional Information**

Use this page for any additional information.
Attach a separate sheet if necessary.

- TOTAL EXISTING INSURANCE $ 1,105,000

OWNER: CHARLES CHHUN $ 285,000

929 556 541 A $ 85,000
949 554 958 A $ 100,000
997 601 645 A--R $ 100,000

OWNER: RICHARD CHHUN $ 285,000

929 556 539 A $ 85,000
949 554 959 A $ 100,000
997 601 641 A--R $ 100,000

OWNER: SAMANTHA C CHHUN $ 200,000

949 554 957 A $ 100,000
997 601 642 A--R $ 100,000

OWNER: DAVID CHHUN $ 185,000

929 556 538 A $ 85,000
997 601 640 A--R $ 100,000

OWNER: SANGVA C CHAN $ 150,000

997 601 643 A--R $ 150,000

## Certification/ Agreement/ Disclosure

**Certification Regarding Sales Illustration** Agent must check the appropriate statement below.

- ☐ Agent certifies that a signed illustration is **not required** by law or the policy applied for is not illustrated in this state.
- ☒ An illustration was signed and **matches the policy applied for.** It is included with this application.
- ☐ An illustration was shown or provided but is **different from the policy applied for.** An illustration conforming to the policy as issued will be provided no later than at the time of policy delivery.
- ☐ **No illustration conforming to the policy** as applied for was shown or provided prior to or at the time of this application. An illustration conforming to the policy as issued will be provided no later than at the time of policy delivery.
- ☐ If illustration was **only shown on a computer screen,** check and complete details below.

An illustration was displayed on a computer screen. The displayed illustration **matches the policy applied for** but no printed copy of the illustration was provided. An illustration conforming to the policy as issued will be provided no later than at the time of policy delivery. The illustration on the screen included the following personal and policy information:

1. Gender (as illustrated) ☐ M ☐ F ☐ Unisex Age ____
2. Rating class (e.g. standard, smoker) ☐ Preferred ☐ Standard ☐ Non-smoker ☐ Smoker ☐ Other ____
3. Type of policy (e.g. L-98, Whole Life) ____
4. Initial Death Benefit $ ____ Death Benefit Option ____
5. Guaranteed Minimum Death Benefit ☐ age 55 ☐ age 65 ☐ age 75 ☐ age 85 ☐ 5 years
6. Dividend Option ____
7. Riders ____ $ ____
   ____ $ ____
   ____ $ ____

**Agreement/Disclosure**

**I have read this application for life insurance including any amendments and supplements and to the best of my knowledge and belief, all statements are true and complete. I also agree that:**

- My statements in this application and any amendment(s), paramedical/medical exam and supplement(s) are the basis of any policy issued.
- This application and any: amendment(s); paramedical/medical exam; and supplement(s) to this application, will be attached to and become part of the new policy.
- No information will be deemed to have been given to the Company unless it is stated in this application and paramedical/medical exam, and any supplement(s).
- Only the Company's President, Secretary or Vice-President may: (a) make or change any contract of insurance; (b) make a binding promise about insurance; or (c) change or waive any term of an application, receipt, or policy.
- Except as stated in the Temporary Insurance Agreement and Receipt, no insurance will take effect until a policy is delivered to the Owner and the full first premium due is paid. It will only take effect at the time it is delivered if: (a) the condition of health of each person to be insured is the same as stated in the application; and (b) no person to be insured has received any medical advice or treatment from a medical practitioner since the date of the application.

**Certification/ Agreement/ Disclosure**

*(continued)*

- I understand that paying my insurance premiums more frequently than annually may result in a higher yearly out-of-pocket cost or different cash values.
- **If I intend to replace existing insurance or annuities, I have so indicated in Section 2, Question 2 of this application.**
- **I have received the Company's Consumer Privacy Notice and, as required, the Life Insurance Buyer's Guide.**
- **If I was required to sign an HIV Informed Consent Authorization, I have received a copy of that Authorization.**

**Taxpayer Identification Number Certification**

Under penalties of perjury, I, the Owner, certify that:

The number shown in this application is my correct taxpayer identification number, and I am not subject to backup withholding because:

(a) I have not been notified by the IRS that I am subject to backup withholding as a result of a failure to report all interest or dividends; **OR**

(b) the IRS has notified me that I am not subject to backup withholding. *(If you have been notified by the IRS that you are currently subject to backup withholding because of underreporting interest or dividends on your tax return, you must cross out and initial this item.)*

I am a U.S. citizen or a U.S. resident alien for tax purposes.

*(If you are not a U.S. citizen or a U.S. resident alien for tax purposes, please cross out this certification and complete form W-8BEN).*

**Please note:** The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

**SIGNATURES:**

If not witnessing all signatures, Witness should sign next to the signature being witnessed.

Signed at City, State CICERO, IL Date 12. 01. 05

**Proposed Insured #1** MOEUN SOK
(age 15 or over)

Signed at City, State ______ Date ______

**Proposed Insured #2** ______
(age 15 or over)

Signed at City, State CICERO, IL Date 12. 01. 05

**Owner** [signature]
(If other than Proposed Insured)
(If age 15 or over) If the Owner is a firm or corporation, include Officer's title with signature.

Signed at City, State ______ Date ______

**Parent or Guardian** ______
(If Owner or Proposed Insured(s) is/are under 18, sign here if not signed above.)

Signed at City, State CICERO IL Date 12. 01. 05

**Witness to Signatures** [signature]
(Licensed Agent/Producer)

**Please print Agent/Producer name** SOMCHAI PREEYAPHANICH

ENB-7-05-IL FF (05/05)

# FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE WITH COVERAGE CONTINUATION

Non - Participating

